417 So.2d 835 (1982)
George S. CHRISS, Appellant/Petitioner,
v.
Sara P. CHRISS, Appellee/Respondent.
Nos. AG-307, AL-31.
District Court of Appeal of Florida, First District.
August 6, 1982.
Tyrie A. Boyer of Boyer, Tanzler, Blackburn, Boyer & Nichols, Jacksonville, for appellant/petitioner.
James G. Roberts, Jacksonville, for appellee/respondent.
McCORD, Judge.
We consolidate for review the above appeal from non-final order entered after final order and the petition for writ of common *836 law certiorari. The non-final order denied a motion of George S. Chriss (hereinafter referred to as George) to intervene and denied an amended motion of George to vacate and set aside an order appointing guardian. The order also granted the motion of the guardian, Sara P. Chriss (hereinafter referred to as Sara) for rule to show cause directed to George and directed that he forthwith deliver to Sara certain assets previously provided by George and held in trust by him for Julia, the daughter of George and Sara.
The petition for writ of certiorari seeks review of a subsequent order in the same proceeding which required George to post a bond in the amount of $210,000, conditioned, among other things, to comply with the orders of the court and to not spend, waste, transfer, assign, pledge or dispose of any of the previously referred to assets without further order of the court. We reverse the order appealed and quash the order setting bond and all other orders entered subsequent to the order appealed.
George and Sara are the divorced parents of 22-year-old Julia, whom the record indicates is mentally retarded. Pursuant to the dissolution agreement, George holds assets for Julia and the other children in a custodial or trustee capacity, which funds have not been available to Sara. In May 1981 Julia petitioned the circuit court to appoint her mother, Sara, as guardian of her estate, pursuant to Section 744.341, Florida Statutes (1981). The trial court granted the petition naming Sara guardian and issued letters of guardianship to Sara. No notice of the proceeding was given to George. (None was required by Section 744.341 unless requested by the ward.)
Approximately one month later, George filed an amended motion to vacate and set aside the order appointing guardian and alternatively requested that either he and Sara be appointed co-guardians of Julia's property or that the court appoint a financial institution (approved by the court) as such guardian. The trial court (a different judge than the judge who entered the guardianship order) thereafter entered the non-final order denying intervention by George, denying George's amended motion to vacate and set aside the order appointing guardian and directing George to forthwith deliver possession of the assets held by him to guardian Sara. Among other findings, the trial court found that the petition of Julia for voluntary guardianship complied with Section 744.341, Florida Statutes; that Sara is entitled to act in her capacity as guardian of Julia; and that George is not a party to the cause and has no standing before the court to attack the petition for voluntary guardianship. The court also stated in the order that it took judicial notice of the stipulation and final judgment of dissolution of marriage between George and Sara; that the stipulation stated as follows: "It is agreed by the parties that Julia Chriss is legally competent, but partially physically dependent on her parents." The stipulation was not made part of the record in these proceedings,[1] and the final judgment of dissolution does not recite the stipulation.
The record here reflects that Julia, who was of age when the final judgment of dissolution between her father and mother was entered, is mentally retarded to the extent that she has a social age of a 16 year old. The express language of the final judgment of dissolution provided that George would be the sole custodian or trustee of the children's assets and that Sara would have no claim to those assets; that George would pay to Julia, out of the funds and assets on the first day of each month, the reasonable expenses for her clothing, medical, recreation and spending monies incurred in the previous month. We find that *837 George, as the father of Julia and as the holder of assets of Julia, pursuant to the final judgment of dissolution of the marriage between George and Sara, had an interest in the subject matter and therefore standing to question the legality of the voluntary guardianship proceeding. Section 744.341, Florida Statutes, provides in pertinent part as follows:
(1) Without adjudication of incompetency, the court shall appoint a guardian of the estate of a resident or nonresident person who, though mentally competent, is incapable of the care, custody, and management of his estate by reason of age or physical infirmity and who has voluntarily petitioned for the appointment. The petition shall be accompanied by a certificate of a licensed physician that he has examined the petitioner and that the petitioner is competent to understand the nature of the guardianship and his delegation of authority. Notice of hearing on any petition for appointment and for authority to act shall not be required, except that notice shall be given to the ward and to any person to whom the ward requests that notice be given. Such request may be made in the petition for appointment of guardian or in a subsequent written request for notice signed by the ward. (Emphasis supplied.)
The verified petition of Julia for voluntary guardianship contains the following allegation in Paragraph 4 thereof: "Petitioner, although mentally competent, is incapable of the care, custody and management of her estate by reason of physical infirmity." Among other things, George's amended motion to vacate and set aside the order appointing guardian contains the following allegations:
3. The allegations of paragraph 4 of the petition are untrue. Julia is incapable of the care, custody and management of her estate by reason of her mental incapacity rather than any reason of physical infirmity (as alleged in the petition). In the opinion of Drs. Sternthal and Anthony (as stated in attached Exhibits A and B, respectively), Julia is mentally retarded.
4. Julia is mentally retarded to the extent that she is incompetent to understand the nature of the guardianship and her delegation of authority.
5. By reason of her mental retardation, Julia is susceptible to undue influence, especially from her mother; and the petitioner believes that Sara P. Chriss unduly influenced Julia to file her petition herein for reasons other than Julia's best interest and economic welfare.
6. Sara P. Chriss has no experience in investing, managing or controlling of funds other than the handling of her personal finances. Sara P. Chriss lacks the education, experience and training to qualify her to have the care, custody and management of Julia's estate; the said Sara was employed exclusively as a secretary until 1958 and thereafter has been unemployed.
The proceeding for appointment of guardian was ex parte in nature since no notice was given to George. The order was perfunctory, simply reciting, "This cause came on to be heard on the verified Petition of Julia M. Chriss, a physically infirmed person, for appointment of her mother, Sara P. Chriss, as guardian of the property of the said Julia M. Chriss and Julia M. Chriss having appeared before this court and giving her testimony with regard thereto, it is... ." The order does not make a specific finding or adjudication that Julia, though mentally competent, is incapable of the care, custody, and management of her estate by reason of age or physical infirmity. The letter of a medical doctor was attached to the petition for guardianship stating that, as a result of his examination, he feels that Julia "has a mild mental retardation (tested full-scale IQ 64) probably secondary to an Organic Brain Syndrome at birth but that she is mentally competent." (Emphasis supplied.) He further stated his opinion that she was competent to understand the nature of the guardianship and its delegation of authority. He did not state or imply that she was in any way physically infirm. Julia's father, George, who is also a medical doctor, filed an affidavit in support of his *838 motion to intervene in which he swore that Julia "was not at the time of the filing of said petition or at the time of entry of the order appointing the guardian physically infirm." He further stated in the affidavit that she was not at any time prior to the filing of the petition nor at any time thereafter physically infirm.
The trial court as aforesaid denied George's motion to intervene and his amended motion to set aside the order appointing guardian. It appears from the order that the evidence upon which the trial court relied for denial was the stipulation in the dissolution proceeding that Julia was "legally competent, but partially physically dependent on her parents." The words "partially physically dependent on her parents" do not necessarily mean that she has a physical infirmity.
Under the circumstances, it was an abuse of discretion for the trial court to deny George's motion for intervention and to deny him an opportunity to prove his allegations that Julia has and had no physical infirmity which would allow the appointment of a guardian for her under § 744.341 and that Sara was and is not qualified to be guardian. The order denying George's motion for intervention and his motion to set aside the order of guardianship is reversed. The trial court's ruling on the motion to set aside the order of guardianship should be determined from the evidence presented at an evidentiary hearing. Certiorari is granted and all orders entered subsequent to the above-reversed order are moot and are, therefore, quashed.
Remanded for further proceedings consistent herewith.
ROBERT P. SMITH, Jr., C.J., and BOOTH, J., concur.
NOTES
[1] George contends that the trial court erred in taking judicial notice of the stipulation filed in another proceeding without making the record of that proceeding a part of the record in this cause. Section 90.202(6) provides that a court may take judicial notice of records of any court of this state. It does not appear in the record before us that George made a contemporaneous objection to the court taking judicial notice of the quoted part of the stipulation. He, therefore, cannot raise this question for the first time on appeal.